# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

FRANCISCAN ALLIANCE, INCORPORATED; CHRISTIAN MEDICAL AND DENTAL SOCIETY; SPECIALTY PHYSICIANS OF ILLINOIS, L.L.C.,

Plaintiffs-Appellees,

v.

XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendants-Appellants

AMERICAN CIVIL LIBERTIES UNION OF TEXAS; RIVER CITY GENDER ALLIANCE,

Intervenor Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas

## BRIEF FOR DEFENDANTS-APPELLANTS

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MARLEIGH D. DOVER
CHARLES W. SCARBOROUGH
McKAYE L. NEUMEISTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8100*

## CERTIFICATE OF INTERESTED PERSONS

*Franciscan Alliance, Inc., et al. v. Becerra, et al.*, No. 21-11174

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellees:

    Franciscan Alliance, Inc.
    Christian Medical and Dental Society
    Specialty Physicians of Illinois, L.L.C.

Defendants-Appellants:

    Xavier Becerra, Secretary, United States Department of Health and Human
        Services
    United States Department of Health and Human Services

Intervenor Defendants-Appellants:

    American Civil Liberties Union of Texas
    River City Gender Alliance

Counsel:

For Plaintiffs-Appellees:

    Luke W. Goodrich
    Daniel Chen
    Mark Rienzi
    Joseph C. Davis
    *The Becket Fund for Religious Liberty*

For Defendants-Appellants:

Marleigh D. Dover
Charles W. Scarborough
McKaye L. Neumeister
Jack Starcher
Bradley P. Humphreys
*United States Department of Justice*

For Intervenor Defendants-Appellants:

Lindsey Kaley
Joshua A. Block
Brigitte Amiri
James D. Esseks
Louise Melling
Daniel Mach
*American Civil Liberties Union Foundation*

Andre Segura
Brian Klosterboer
*American Civil Liberties Union of Texas*

Scout Richters
*American Civil Liberties Union Foundation of Nebraska*

/s/ *McKaye L. Neumeister*
McKAYE L. NEUMEISTER
Counsel for Defendants-Appellants

**STATEMENT REGARDING ORAL ARGUMENT**

The district court ruled that a challenge to a regulation implementing the prohibition of sex discrimination in Section 1557 of the Patient Protection and Affordable Care Act—which has since been vacated, rescinded, and replaced—is not moot. The court further ruled that plaintiffs had demonstrated standing and ripeness to bring a belatedly reframed challenge under the Religious Freedom Restoration Act to permanently enjoin hypothetical future enforcement actions under Section 1557 by the U.S. Department of Health and Human Services, and imminent irreparable injury sufficient to justify such permanent injunctive relief. Those rulings fundamentally disregard the bedrock Article III requirement that the federal judicial power be employed only to resolve actual cases or controversies and cannot be invoked to render advisory opinions based on hypothetical facts. The government believes that oral argument would aid in the consideration of this appeal.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................vi

INTRODUCTION ............................................................................................1

STATEMENT OF JURISDICTION ...................................................................4

STATEMENT OF THE ISSUES........................................................................4

STATEMENT OF THE CASE ...........................................................................5

    A.     Statutory, Regulatory, and Factual Background ...........................5

        1.     Section 1557 ....................................................................5

        2.     The 2016 Rule and Subsequent Litigation .........................6

        3.     The 2020 Rule and Subsequent Litigation .........................7

    B.     Prior Proceedings........................................................................11

SUMMARY OF ARGUMENT...........................................................................18

STANDARD OF REVIEW ...............................................................................21

ARGUMENT ..................................................................................................21

I.     This Case Is Moot Because Plaintiffs Only Challenged the 2016 Rule.............25

II.     In the Alternative, Plaintiffs Failed to Demonstrate Standing, Ripeness, and Imminent Irreparable Harm Sufficient to Support a Permanent Injunction................................................................................................34

    A.     Plaintiffs Lack Standing. ..............................................................35

    B.     Plaintiffs' Claim Is Not Ripe. .......................................................46

    C.     The District Court Erred in Concluding that Plaintiffs Demonstrated Imminent Irreparable Harm Sufficient to Justify Permanent Injunctive Relief.......................................................52

CONCLUSION ................................................................................................................ 53

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                     **Page(s)**

*Akiachak Native Cmty. v. U.S. Dep't of Interior,*
  827 F.3d 100 (D.C. Cir. 2016) ........................................................................31

*Alaska v. U.S. Dep't of Agric.,*
  17 F.4th 1224 (D.C. Cir. 2021) ............................................................... 29, 30

*Alaska v. U.S. EPA,*
  521 F.2d 842 (9th Cir. 1975) .........................................................................26

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ........................................................................................22

*American Stewards of Liberty v. Department of Interior,*
  960 F.3d 223 (5th Cir. 2020) .........................................................................24

*Babbitt v. Farm Workers,*
  442 U.S. 289 (1979) ......................................................................................23

*Bostock v. Clayton County,*
  140 S. Ct. 1731 (2020) ............................................................ 1, 8, 9, 37, 41

*California v. Texas,*
  141 S. Ct. 2104 (2021) ............................................................................43-44

*Chafin v. Chafin,*
  568 U.S. 165 (2013) ......................................................................................46

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ........................................................................................42

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...........................................................................21, 23, 40

*Colwell v. HHS,*
  558 F.3d 1112 (9th Cir. 2009) ................................................................ 51, 52

*Contender Farms, LLP v. U.S. Dep't of Agric.*,
779 F.3d 258 (5th Cir. 2015) ............................................................. 48-49

*Duarte ex rel. Duarte v. City of Lewisville*,
759 F.3d 514 (5th Cir. 2014) ............................................................. 23, 35

*Empower Texans, Inc. v. Geren*,
977 F.3d 367 (5th Cir. 2020) ............................................................. 22

*Environmental Conservation Org. v. City of Dallas*,
529 F.3d 519 (5th Cir. 2008) ............................................................. 25

*Flannery v. Carroll*,
676 F.2d 126 (5th Cir. 1982) ............................................................. 33

*Flast v. Cohen*,
392 U.S. 83 (1968) ............................................................................. 22

*Fontenot v. McCraw*,
777 F.3d 741 (5th Cir. 2015) ............................................................. 36

*Franciscan All., Inc. v. Becerra*,
843 F. App'x 662 (5th Cir. 2021) ...................................................... 16

*Freytag v. Commissioner*,
501 U.S. 868 (1991) ........................................................................... 48

*Golden v. Zwickler*,
394 U.S. 103 (1969) ........................................................................... 22

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ........................................................................... 50

*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) ............................................................. 52-53

*Herndon v. Upton*,
985 F.3d 443 (5th Cir. 2021)
*cert. denied*, 142 S. Ct. 82 (2021) .................................................... 31

*Hughes v. City of Cedar Rapids,*
840 F.3d 987 (8th Cir. 2016) ................................................................34

*Iowa Right to Life Comm., Inc. v. Tooker,*
717 F.3d 576 (8th Cir. 2013) ...........................................................37-38

*Iron Arrow Honor Soc'y v. Heckler,*
464 U.S. 67 (1983) ...............................................................................32

*Janvey v. Alguire,*
647 F.3d 585 (5th Cir. 2011) ................................................................52

*Jones v. Robinson Prop. Grp.,*
427 F.3d 987 (5th Cir. 2005) ................................................................36

*Kitty Hawk Aircargo, Inc. v. Chao,*
418 F.3d 453 (5th Cir. 2005) ................................................................36

*Lewis v. Continental Bank Corp.,*
494 U.S. 472 (1990) .............................................................................25

*Linda R.S. v. Richard D.,*
410 U.S. 614 (1973) .............................................................................25

*Lopez v. Candaele,*
630 F.3d 775 (9th Cir. 2010) ...........................................................24, 45

*Lopez v. City of Houston,*
617 F.3d 336 (5th Cir. 2010) ................................................................47

*Louisiana Envtl. Action Network v. U.S. EPA,*
382 F.3d 575 (5th Cir. 2004) ................................................................25

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .........................................................................22, 40

*Monk v. Huston,*
340 F.3d 279 (5th Cir. 2003) ................................................................24

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010) .............................................................................14

*Moore v. Brown,*
  868 F.3d 398 (5th Cir. 2017) ...............................................25, 29, 44

*Motient Corp. v. Dondero,*
  529 F.3d 532 (5th Cir. 2008) ...............................................25

*National Mining Ass'n v. U.S. Dep't of Interior,*
  251 F.3d 1007 (D.C. Cir. 2001) ...........................................26

*National Park Hosp. Ass'n v. Department of Interior,*
  538 U.S. 803 (2003) .............................................................50, 51

*National Right to Life Political Action Comm. v. Connor,*
  323 F.3d 684 (8th Cir. 2003) ...............................................47

*New Mexico Health Connections v. HHS,*
  946 F.3d 1138 (10th Cir. 2019) ...........................................29

*New York State Rifle & Pistol Ass'n v. City of New York,*
  140 S. Ct. 1525 (2020) .......................................................31, 32, 33

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 726 (1998) .....................................................38, 46, 47, 48, 49

*Peterson v. Bell Helicopter Textron, Inc.,*
  806 F.3d 335 (5th Cir. 2015) ...............................................17, 32, 34

*Prasco, LLC v. Medicis Pharm. Corp.,*
  537 F.3d 1329 (Fed. Cir. 2008) ...........................................42

*Raines v. Byrd,*
  521 U.S. 811 (1997) .............................................................21-22

*Ramirez v. Collier,*
  No. 21-5592, 2022 WL 867311 (U.S. Mar. 24, 2022) ...........50-51

*Religious Sisters of Mercy v. Azar,*
  513 F. Supp. 3d 1113 (D.N.D. 2021) ...................................10

*Renne v. Geary,*
  501 U.S. 312 (1991) .............................................................47

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) .................................................................47

*Sannon v. United States,*
    631 F.2d 1247 (5th Cir. 1980) ...............................................................26

*Scahill v. District of Columbia,*
    909 F.3d 1177 (D.C. Cir. 2018) .............................................................36

*Scott v. Schedler,*
    826 F.3d 207 (5th Cir. 2016) .................................................................21

*Solferini v. Corradi USA, Inc.,*
    No. 20-40645, 2021 WL 3619905 (5th Cir. Aug. 13, 2021) .........................33

*Sossamon v. Lone Star State of Tex.,*
    560 F.3d 316 (5th Cir. 2009) ..................................................... 28, 28-29

*Southern Constructors Grp. v. Dynalectric Co.,*
    2 F.3d 606 (5th Cir. 1993) ....................................................................33

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) .................................................................23

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .............................................................................23

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .............................................................................44

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................... 22, 23, 40, 45

*Texas v. United States,*
    523 U.S. 296 (1998) .............................................................................24

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ...........................................................23-24

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ..........................................................................35

x

*Trump v. New York,*
141 S. Ct. 530 (2020) ................................................................................3

*281 Care Comm. v. Arneson,*
638 F.3d 621 (8th Cir. 2011) .....................................................................49

*United Motorcoach Ass'n v. City of Austin,*
851 F.3d 489 (5th Cir. 2017) .....................................................................52

*United Pub. Workers of Am. (C.I.O.) v. Mitchell,*
330 U.S. 75 (1947) ..............................................................................24, 45

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
454 U.S. 464 (1982) ..................................................................................21

*Walker v. Azar,*
480 F. Supp. 3d 417 (E.D.N.Y. 2020) ...................................................9, 42
No. 20-cv-2834, 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020) ....................9

*Walmart Inc. v. U.S. Dep't of Justice,*
21 F.4th 300 (5th Cir. 2021) ..................................................................48, 49

*Warth v. Seldin,*
422 U.S. 490 (1975) ..................................................................................22

*Whitman-Walker Clinic, Inc. v. HHS,*
485 F. Supp. 3d 1 (D.D.C. 2020) ..........................................................9, 42

*Wyoming v. U.S. Dep't of Interior,*
587 F.3d 1245 (10th Cir. 2009) .................................................................26

*Yarls v. Bunton,*
905 F.3d 905 (5th Cir. 2018) .....................................................................28

*Zanders v. Swanson,*
573 F.3d 591 (8th Cir. 2009) .....................................................................23

*Zimmerman v. City of Austin,*
881 F.3d 378 (5th Cir. 2018) .....................................................................37

**Statutes:**

20 U.S.C. § 1681 *et seq.* ........................................................................ 7, 27

20 U.S.C. § 1681(a) ................................................................................. 5, 41

20 U.S.C. § 1681(a)(3) .................................................................................6

20 U.S.C. § 1687 ..........................................................................................6

20 U.S.C. § 1688 ..........................................................................................6

28 U.S.C. § 1291 ..........................................................................................4

28 U.S.C. § 1331 ..........................................................................................4

28 U.S.C. § 1361 ..........................................................................................4

42 U.S.C. § 2000bb *et seq.* ...........................................................11, 27, 38

42 U.S.C. § 2000bb-1(a)-(b) ......................................................................46

42 U.S.C. § 18116 ......................................................................................27

42 U.S.C. § 18116(a) .............................................................. 5, 10, 34, 41

**Regulations:**

45 C.F.R. § 80.7 ........................................................................................52

45 C.F.R. § 80.7(b)-(d) .............................................................................45

45 C.F.R. § 80.8 ........................................................................................52

45 C.F.R. § 86.71 ......................................................................................45

45 C.F.R. § 92.2 ..........................................................................................7

45 C.F.R. § 92.5 ........................................................................................52

45 C.F.R. § 92.5(a) ...............................................................................................45

45 C.F.R. § 92.6(b)...............................................................................................8

**Rules:**

Fed. R. Civ. P. 54(c) ...............................................................................16, 19, 32

Fed. R. Civ. P. 60...............................................................................................4

**Other Authorities:**

10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2662,
    Westlaw (database updated Apr. 2021) ...............................................................33

10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2664,
    Westlaw (database updated Apr. 2021) ...............................................................33

81 Fed. Reg. 31,376 (May 18, 2016) ...............................................................6

84 Fed. Reg. 27,846 (June 14, 2019) ...............................................................13

85 Fed. Reg. 37,160 (June 19, 2020) ...............................................7, 8, 37, 41, 43

86 Fed. Reg. 7023 (Jan. 25, 2021) ...............................................................10

86 Fed. Reg. 27,984 (May 25, 2021) ...............................................11, 37, 38, 44

HHS, Office for Civil Rights, *HHS Notice and Guidance on Gender Affirming Care, Civil
    Rights, and Patient Privacy* (Mar. 2, 2022), https://go.usa.gov/xzGbp ...........................2

Office of Mgmt. & Budget, *Pending EO 12866 Regulatory Review*,
    https://go.usa.gov/xzG8G (last visited Mar. 24, 2022) ...............................................11

Office of Mgmt. & Budget, Unified Regulatory Agenda, *Nondiscrimination in Health
    Programs and Activities* (Fall 2021), https://go.usa.gov/xzQP6 ...................................11

# INTRODUCTION

This appeal involves a challenge to a 2016 Rule promulgated by the U.S. Department of Health and Human Services (HHS), which codified regulations implementing the nondiscrimination provision in Section 1557 of the Patient Protection and Affordable Care Act (ACA). Section 1557 prohibits any federally funded entity from discriminating on the basis of sex in their health programs and activities. The statute provides important protections, including protections for members of the LGBTQI+ community.

In 2016, HHS adopted a rule interpreting Section 1557's prohibition of sex discrimination to prohibit discrimination on the basis of gender identity and termination of pregnancy. Those portions of the 2016 Rule have since been vacated and rescinded. In 2020, HHS adopted a new rule that paraphrases the statutory text of Section 1557 but does not adopt any new regulatory definition of sex discrimination. In *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Supreme Court confirmed that Title VII's prohibition on discrimination because of sex includes discrimination on the basis of gender identity. HHS subsequently announced its conclusion that *Bostock*'s reasoning extends to Section 1557. But HHS has not to date evaluated whether Section 1557 requires the provision and coverage of gender-

transition procedures[1] by entities with religious objections to providing or covering those procedures, or how the Religious Freedom Restoration Act (RFRA) and other religious exemptions might apply to such religious entities. Nor has HHS threatened or initiated any related enforcement activity against any religious entities who object to providing gender-transition procedures or abortions in which the protections of RFRA or other religious exemptions could be asserted and assessed.

Plaintiffs are religious entities that are opposed to performing and providing insurance coverage for gender-transition procedures and abortions. Because plaintiffs believed the 2016 Rule might require them to take such actions, they brought this lawsuit in 2016 challenging the 2016 Rule. After they obtained a final judgment in this litigation vacating the challenged portions of the 2016 Rule and HHS rescinded and replaced that rule, plaintiffs asked the district court for a permanent injunction to prevent HHS from enforcing Section 1557 against them. Plaintiffs framed their lawsuit solely as a challenge to the 2016 Rule, and HHS has never taken a position on whether plaintiffs' proposed conduct—to decline to participate in gender-transition procedures or perform abortions, and to exclude coverage for such services in their

---

[1] The district court defined "gender-transition procedures" to include "surgery, counseling, provision of pharmaceuticals, or other treatments sought in furtherance of a gender transition." ROA.5049 n.1. HHS ordinarily employs the term "gender affirming care" to encompass such services. *See* HHS, Office for Civil Rights, *HHS Notice and Guidance on Gender Affirming Care, Civil Rights, and Patient Privacy* (Mar. 2, 2022), https://go.usa.gov/xzGbp. For consistency, however, this brief will use the district court's terminology.

insurance plans—violates Section 1557, and has not threatened any enforcement action against plaintiffs.  Nonetheless, the district court entertained plaintiffs' request and issued permanent injunctive relief against HHS.

The district court's basic error is clear: it enjoined HHS from enforcing Section 1557 based on positions that HHS has not actually adopted.  Such an anticipatory injunction based on hypothetical facts is at odds with core Article III and equitable principles.  Whether viewed as a problem of mootness, an Article III standing defect, a lack of ripeness, and/or an absence of irreparable harm to support an injunction, the district court erred by adjudicating and providing relief on a claim that is fundamentally rooted in speculation.  *See, e.g.*, *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam) (holding that both an absence of standing and a lack of ripeness precluded judicial resolution where the plaintiffs' claims were "riddled with contingencies and speculation").

This lawsuit—as presented in the operative complaint and consistently litigated by plaintiffs for the first four years of this long-running litigation—involves a RFRA challenge to the 2016 Rule.  Accordingly, this case became moot as a result of the vacatur, rescission, and replacement of the challenged portions of the 2016 Rule.  But even if the case were not moot, the district court still lacked jurisdiction to enjoin HHS's possible future enforcement of Section 1557 because plaintiffs have not demonstrated any threat of imminent injury sufficient to confer standing or that their belatedly reframed RFRA claim is ripe.  The 2020 Rule does not take a position on

3

whether the provision or coverage of gender-transition procedures is required for religious entities and it expressly indicates that Section 1557 will be enforced consistent with Title IX's abortion-neutrality provision. Moreover, HHS has not initiated any Section 1557 enforcement activity against plaintiffs—or, indeed, any religious entity that objects to providing gender-transition procedures and abortions—in which RFRA and other religious exemptions could be considered or applied. For similar reasons, the district court erred in finding that plaintiffs demonstrated imminent irreparable harm sufficient to justify a permanent injunction.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court pursuant to 28 U.S.C. §§ 1331 and 1361. ROA.317. Plaintiffs' standing is contested. *See infra* Part II.A. The district court entered its order granting a permanent injunction on August 16, 2021, ROA.5048, and modified its order in response to the government's motion under Federal Rule of Civil Procedure 60 on October 1, 2021, ROA.5084. The government filed its notice of appeal on November 21, 2021, ROA.5086, and intervenors filed their notice of appeal on November 30, 2021, ROA.5088. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that the case was not moot, where the provisions of the 2016 Rule that plaintiffs challenged have been

vacated and rescinded, and plaintiffs did not properly preserve a challenge to the statute itself.

2.     Whether plaintiffs meet the requirements of standing and ripeness to seek a pre-enforcement injunction against HHS based on the possibility that HHS might, at some time in the future, interpret and enforce the anti-discrimination requirements of Section 1557 of the ACA to require that plaintiffs perform and provide insurance coverage for gender-transition services or abortions.

3.     Whether the district court abused its discretion by granting a permanent injunction prohibiting possible future enforcement of Section 1557 to require plaintiffs to perform and provide insurance coverage for gender-transition services or abortions, when plaintiffs failed to demonstrate imminent irreparable harm.

## STATEMENT OF THE CASE

### A.     Statutory, Regulatory, and Factual Background

#### 1.     Section 1557

Section 1557 of the ACA prohibits, as relevant here, "any health program or activity" "receiving Federal financial assistance" from discriminating against an individual based on "ground[s] prohibited under" several other statutes.  42 U.S.C. § 18116(a).  One of the referenced statutes is Title IX of the Education Amendments of 1972, which prohibits discrimination "on the basis of sex."  20 U.S.C. § 1681(a).

## 2. The 2016 Rule and Subsequent Litigation

In 2016, HHS promulgated a rule implementing the anti-discrimination requirements of Section 1557. *See* 81 Fed. Reg. 31,376 (May 18, 2016) (2016 Rule). As relevant here, the 2016 Rule defined discrimination "on the basis of sex" to include discrimination on the basis of "termination of pregnancy" and "gender identity." *See id.* at 31,467. The 2016 Rule also stated that the categorical exclusion of health-insurance coverage for gender-transition services is unlawful. *Id.* at 31,429. The 2016 Rule did not expressly incorporate Title IX's religious exemption and abortion-neutrality provision. *Id.* at 31,380; *see* 20 U.S.C. §§ 1681(a)(3), 1687, 1688. The 2016 Rule did make clear, however, that other "statutory protections for religious freedom and conscience" applied. 81 Fed. Reg. at 31,379-80.

Several lawsuits by religious entities followed, including the case at issue here. *See also, e.g.*, *Religious Sisters of Mercy v. Burwell*, No. 3:16-cv-386 (D.N.D. filed Nov. 7, 2016). In December 2016, the district court in this case issued a nationwide preliminary injunction barring enforcement of the challenged parts of the 2016 Rule. *See* ROA.1800-1801. In July 2017, the court stayed this case to permit HHS to reconsider the 2016 Rule. ROA.2907-2916. Before HHS had completed its review, the court lifted the stay in December 2018, ROA.2986, and vacated the challenged portions of the 2016 Rule in October 2019, ROA.4797, 4815.

### 3.     The 2020 Rule and Subsequent Litigation

**a.**     In June 2020, HHS finalized a new rule implementing Section 1557.  *See* 85 Fed. Reg. 37,160 (June 19, 2020) (2020 Rule).  As relevant here, the 2020 Rule rescinded the 2016 Rule's provisions defining sex discrimination, including the portion regarding gender-identity and termination-of-pregnancy discrimination.  *See id.* at 37,162-65.  In place of those provisions, the 2020 Rule paraphrased the statutory language without adopting a new regulatory definition of sex discrimination.  *See id.* at 37,178.  The new provision reads as follows:

> (a) Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

> (b) The grounds are the grounds prohibited under the following statutes: … Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*) (sex); ….

45 C.F.R. § 92.2.

In the 2020 Rule's preamble, HHS explained that it did not believe that either Section 1557 or Title IX prohibited gender-identity discrimination.  *See* 85 Fed. Reg. at 37,162, 37,168, 37,183-86, 37,207.

In addition, the 2020 Rule stated that HHS interpreted the religious exemptions provided by Title IX to apply under Section 1557, along with the religious and conscience exemptions of RFRA and other statutes whose application the 2016 Rule had recognized. *See* 85 Fed. Reg. at 37,204-09. The relevant regulatory provision reads as follows:

> (b) Insofar as the application of any requirement under this part would violate, depart from, or contradict definitions, exemptions, affirmative rights, or protections provided by any of the statutes cited in paragraph (a) of this section [including Title IX] or provided by … the Religious Freedom Restoration Act … such application shall not be imposed or required.

45 C.F.R. § 92.6(b). In the preamble, the agency stated its view that the new provision would "not … create any new conscience or religious freedom exemptions beyond what Congress has already enacted." 85 Fed. Reg. at 37,206. The 2020 Rule also made clear that Title IX's abortion-neutrality provision applies under Section 1557. *Id.* at 37,192-93, 37,207-08, 37,218.

**b.** Three days after HHS submitted the 2020 Rule for publication in the Federal Register, the Supreme Court decided *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). The Court held that Title VII's prohibition of discrimination "because of" sex includes discrimination because of sexual orientation and transgender status. *Id.* at 1737-41. However, the Court specifically reserved the question of how RFRA and other "doctrines protecting religious liberty interact with Title VII," explaining that these "are questions for future cases." *Id.* at 1754. The Court noted in dicta that

"RFRA operates as a kind of super statute, displacing the normal operation of other federal laws" and that "it might supersede Title VII's commands in appropriate cases." *Id.*

      **c.**     Following *Bostock*, plaintiffs in several district courts challenged the 2020 Rule as substantively and procedurally unlawful under the Administrative Procedure Act (APA). *See, e.g.*, *Washington v. HHS*, No. 20-cv-1105 (W.D. Wash. filed July 16, 2020); *Whitman-Walker Clinic, Inc. v. HHS*, No. 20-cv-1630 (D.D.C. filed June 22, 2020); *Walker v. Becerra*, No. 20-cv-2834 (E.D.N.Y. filed June 26, 2020). Two district courts issued preliminary injunctions barring HHS from enforcing its repeal of the 2016 regulatory definition of sex discrimination as including discrimination on the basis of sex stereotyping, and one court enjoined HHS from enforcing the 2020 Rule's incorporation of Title IX's religious exemption. *See Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 64 (D.D.C. 2020) (enjoining part of rescission of 2016 regulatory definition and enforcement of Title IX's religious exemption); *Walker v. Azar*, 480 F. Supp. 3d 417, 427 (E.D.N.Y. 2020) (enjoining part of rescission of 2016 regulatory definition); *Walker v. Azar*, No. 20-cv-2834, 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020) (enjoining rescission of related provision). Both district courts acknowledged that their orders did not affect the vacatur of the 2016 Rule by the district court in this case insofar as it defined sex discrimination to include gender-identity discrimination. *See Whitman-Walker*, 485 F. Supp. 3d at 14 (acknowledging *Franciscan Alliance* vacatur); *Walker*, 480 F. Supp. 3d at 427 (same). The government

appealed the preliminary injunctions in *Walker* and *Whitman-Walker* to the Second and D.C. Circuits respectively. *See Walker v. Becerra*, No. 20-3580 (2d Cir. filed Oct. 16, 2020); *Whitman-Walker Clinic v. HHS*, No. 20-5331 (D.C. Cir. filed Nov. 9, 2020).

Meanwhile, in pending litigation in the District of North Dakota challenging the 2016 Rule, plaintiffs filed an amended complaint in November 2020 "seek[ing] relief from HHS's current interpretation of Section 1557." *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1134 (D.N.D. 2021). The district court in that case issued a permanent injunction on January 19, 2021, enjoining HHS from "interpreting or enforcing Section 1557 of the ACA, 42 U.S.C. § 18116(a), or any implementing regulations thereto against the Catholic Plaintiffs in a manner that would require them to perform or provide insurance coverage for gender-transition procedures." 513 F. Supp. 3d at 1153. The government appealed, and that case is currently pending before the Eighth Circuit. *See Religious Sisters of Mercy v. Becerra*, No. 21-1890 (8th Cir. argued Dec. 15, 2021).

**d.**     On January 20, 2021, President Biden issued Executive Order No. 13,988, which acknowledges *Bostock* and directs agencies to "consider whether to" take any actions "necessary to fully implement statutes that prohibit sex discrimination," "consistent with applicable law" (which includes RFRA). 86 Fed. Reg. 7023, 7024 (Jan. 25, 2021).

On May 10, 2021, HHS issued a notification to inform the public that, consistent with *Bostock* and Title IX, HHS would interpret and enforce Section 1557's

10

prohibition of sex discrimination as including discrimination based on sexual orientation and gender identity. 86 Fed. Reg. 27,984 (May 25, 2021). The notification explicitly states that HHS "will comply with the Religious Freedom Restoration Act, 42 U.S.C. 2000bb *et seq.*, and all other legal requirements." 86 Fed. Reg. at 27,985 (footnote omitted). More recently, the agency announced its intent to issue a Notice of Proposed Rulemaking regarding Section 1557 in 2022. *See* Office of Mgmt. & Budget, Unified Regulatory Agenda, *Nondiscrimination in Health Programs and Activities* (Fall 2021), https://go.usa.gov/xzQP6; *see also* Office of Mgmt. & Budget, *Pending EO 12866 Regulatory Review*, https://go.usa.gov/xzG8G (last visited Mar. 28, 2022).

In light of the Executive Order, the appeals of the preliminary injunctions against the 2020 Rule were first stayed, and later voluntarily dismissed. *See* Order, *Whitman-Walker*, No. 20-5331 (D.C. Cir. Feb. 18, 2021); Order, *Walker*, No. 20-3580 (2d Cir. Mar. 18, 2021); Order, *Whitman-Walker*, No. 20-5331 (D.C. Cir. Nov. 19, 2021); Order, *Walker*, No. 20-3580 (2d Cir. Nov. 22, 2021). And in light of HHS's planned rulemaking, district court proceedings in cases challenging the 2020 Rule have also been stayed. *See, e.g.*, Order, *Walker*, No. 20-cv-2834 (E.D.N.Y. Dec. 6, 2021); Order, *Whitman-Walker*, No. 20-cv-1630 (D.D.C. Sept. 3, 2021).

## B. Prior Proceedings

**1.** Plaintiffs in this appeal are a Catholic hospital association and a Christian healthcare professional association. ROA.5049. Along with several States that are not part of this appeal, plaintiffs brought numerous challenges to the 2016 Rule, including

challenges under the APA and RFRA.  In their APA claims, plaintiffs alleged that the 2016 Rule exceeded HHS's statutory authority by defining discrimination "on the basis of sex" to include discrimination on the basis of termination of pregnancy or gender identity, as well as by failing to expressly incorporate Title IX's religious exemption.  *See* ROA.353, 359.  In their RFRA claims, plaintiffs alleged that the 2016 Rule's definition of sex discrimination substantially burdened their religious exercise without a compelling governmental interest.  *See* ROA.378-381.

Soon after filing the operative complaint in October 2016, plaintiffs moved for a preliminary injunction barring enforcement of the 2016 Rule, and the American Civil Liberties Union of Texas and River City Gender Alliance moved to intervene in defense of the 2016 Rule.  *See* ROA.144, 1476.  The district court granted plaintiffs a preliminary injunction in December 2016, concluding that the challenged provisions of the 2016 Rule likely violated the APA and RFRA.  The preliminary injunction barred HHS "from enforcing the [2016] Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy."  ROA.1801.  HHS thereafter began reconsidering the 2016 Rule, and the court granted HHS's request to stay proceedings.  ROA.2907.

In December 2018, the parties asked the court to lift the stay, and plaintiffs subsequently moved for summary judgment.  ROA.2986-2987.  In their motion, plaintiffs asked the court to "make its preliminary injunction permanent."  ROA.3354. At that time, the government agreed with plaintiffs that the challenged portion of the

2016 Rule was contrary to the statutory meaning of "on the basis of sex," and that the

2016 Rule violated Section 1557 by not incorporating Title IX's religious exemption.

ROA.4368. The government did not oppose plaintiffs' RFRA claim, but noted that

because plaintiffs were "entitled to summary judgment on their APA claim, … there

[wa]s no need … to resolve any other claim to provide them with the relief they seek."

ROA.4368. Nonetheless, the government "ask[ed] the [c]ourt to postpone ruling on

Plaintiffs' summary judgment motions to allow Defendants to complete their ongoing

efforts to amend the [2016] Rule[,] … which, if finalized, [would] moot this case."

ROA.4369. Intervenors argued that the 2016 Rule was lawful in all respects. *See*

ROA.4395-4396. After briefing was complete, HHS issued a notice of proposed

rulemaking to rescind the challenged provisions of the 2016 Rule and notified the

district court. *See* ROA.4519; 84 Fed. Reg. 27,846 (June 14, 2019).

    **2.**    The district court granted summary judgment in plaintiffs' favor, holding

that the challenged portion of the 2016 Rule was contrary to Section 1557 and

substantially burdened plaintiffs' religious exercise in violation of RFRA. ROA.4791-

4795, 4799. The court also granted intervenors' motion to intervene. ROA.4787.

    As to relief, the district court vacated "the unlawful portions of the [2016] Rule

for Defendants' further consideration in light of this opinion and the" prior

preliminary-injunction order. ROA.4797. But the court determined that the

"circumstances d[id] not justify" an injunction. ROA.4797. "Rather," the court

explained that "vacatur redresses both the APA violation and the RFRA violation."

ROA.4797. Citing several cases, including the Supreme Court's decision in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), the court concluded that the best course was to "vacat[e] the [2016] Rule and invit[e] Plaintiffs to return if further relief independent of vacatur[] is later warranted." ROA.4798-4799.[2]

The district court noted several reasons why an injunction was unnecessary to protect plaintiffs from any harm. The court explained that there was "no indication that, once the [2016] Rule is vacated, Defendants w[ould] defy the [c]ourt's order and attempt to apply the [2016] Rule against Plaintiffs." ROA.4798. Indeed, "Defendants … agree[d] with Plaintiffs and the [c]ourt that the [2016] Rule[] … [was] substantively unlawful under the APA" and had "been conscientiously complying with the [preliminary] injunction." ROA.4798-4799 (quotation marks omitted). "Considering Defendants' prior actions and current statements, the [c]ourt conclude[d] that issuance of an injunction would not have a 'meaningful practical effect independent of its vacatur' because vacatur and remand will likely prevent Defendants from applying the [2016] Rule." ROA.4799 (quoting *Monsanto*, 561 U.S. at 165). Thus, the court determined that "neither Plaintiffs nor similarly situated non-parties need injunctive relief from the vacated [2016] Rule." ROA.4799. Instead, the court explained that

---

[2] The district court later granted the government's motion to modify the final judgment "to confirm that … the [c]ourt vacate[d] only the portions of the [2016] Rule that Plaintiffs challenged in this litigation." ROA.4815. The court modified its judgment to clarify that it vacated the 2016 Rule "insofar as the [2016] Rule defines '*On the basis of sex*' to include gender identity and termination of pregnancy." ROA.4815.

14

"Plaintiffs may return to the [c]ourt for redress" if plaintiffs in the future encountered risk of imminent harm. ROA.4799.

The district court issued its final judgment on plaintiffs' APA and RFRA claims, vacating and remanding the 2016 Rule. ROA.4800. The government did not appeal. Plaintiffs appealed, seeking a permanent injunction in addition to vacatur.

**3.** Before this Court, the government argued that plaintiffs' appeal had become moot in light of the vacatur, rescission, and replacement of the 2016 Rule. Plaintiffs disagreed, asserting that they were entitled to a broad injunction against any future agency action that might harm them in the same way as the 2016 Rule. *See* Plaintiffs Brief at 47-48, *Franciscan All., Inc. v. Becerra*, No. 20-10093 (5th Cir. Sept. 21, 2020). The government observed, however, that plaintiffs could not save the case from mootness by requesting relief that they did not properly seek in district court and to which they were not entitled. In particular, the government explained that plaintiffs did not have standing to challenge hypothetical future agency actions and had not demonstrated imminent injury as required to justify injunctive relief. *See* Government Brief at 14-16, *Franciscan All.*, No. 20-10093 (Nov. 20, 2020).

On April 15, 2021, this Court remanded for further proceedings without reaching the merits. The Court noted that "the legal landscape ha[d] shifted significantly" since the district court issued its decision in October 2019, citing HHS's repeal of the 2016 Rule and promulgation of its new rule in June 2020, the Supreme Court's decision in *Bostock*, the preliminary injunctions against the 2020 Rule, and the

15

President's January 2021 Executive Order, among other things. *Franciscan All., Inc. v. Becerra*, 843 F. App'x 662, 662-63 (5th Cir. 2021) (per curiam). The Court concluded that "[t]hese developments ke[pt it] from reaching the merits of this appeal," explaining that "[w]hether the [plaintiffs] are pressing the same claim before us as they did in the district court is unclear, as are the jurisdictional consequences of the evolving state of the law." *Id.* at 663. The Court instructed the district court to consider on remand whether the case is moot, whether plaintiffs asked the district court for relief against the underlying statute, and whether plaintiffs are entitled to injunctive relief against the 2016 rule and the underlying statute. *Id.*

**4.** On remand, plaintiffs asked the district court to issue a permanent injunction barring HHS's hypothetical future enforcement of Section 1557 to require plaintiffs to provide gender-transition procedures and abortions. ROA.4910-4911, 4937-4938. The court granted plaintiffs' request and entered a permanent injunction. ROA.5069.

The district court first concluded that the case was not rendered moot by HHS's decision to withdraw the challenged portions of the 2016 Rule. ROA.5061-5063. The court stated that "the current Section 1557 regulatory scheme credibly threatens the same RFRA-violating religious-burden that the application of the 2016 Rule threatened," so the case is not moot. ROA.5063. As to the government's argument that plaintiffs had not challenged the underlying statute, the court observed that under Federal Rule of Civil Procedure 54(c), district courts may "grant any

appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, but only where relief is otherwise legally permitted." ROA.5068 (quoting *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015)).

The district court likewise concluded that the case was ripe because "the current regulatory scheme for Section 1557 'clearly prohibits' Plaintiffs' conduct, thus, putting them to the 'impossible choice' of either 'defying federal law' and risking 'serious financial and civil penalties,' or else violating their religious beliefs." ROA.5063. In a footnote, the court noted that "[f]or similar reasons, [it] decline[d] to relitigate HHS's standing arguments, as they fail for the same reason as before," citing its prior opinions. ROA.5063 n.12.

The district court also concluded that plaintiffs were entitled to a permanent injunction. ROA.5064-5069. First, the court noted that "success on the merits[ of plaintiffs' RFRA claim] is all but conceded." ROA.5065. Second, the court concluded that the "violation of [plaintiffs'] statutory rights under RFRA is an irreparable harm" and that "enforcement of the 2021 Interpretation forces Christian Plaintiffs to face civil penalties or to perform gender-transition procedures and abortions contrary to their religious beliefs—a quintessential irreparable injury." ROA.5066. The court explained that "vacatur was already insufficient as it led to an identical RFRA violation." ROA.5067.

The district court permanently enjoined HHS "from interpreting or enforcing Section 1557 … or any implementing regulations thereto against Plaintiffs, their current and future members, and those acting in concert or participation with them, including their respective health plans and any insurers or third-party administrators in connection with such health plans, in a manner that would require them to perform or provide insurance coverage for gender-transition procedures or abortions." ROA.5069; *see also* ROA.5084-5085.

## SUMMARY OF ARGUMENT

**I.** This case is moot. The operative complaint makes clear that plaintiffs brought this action as a challenge to HHS's 2016 Rule. Indeed, that is how plaintiffs consistently presented this challenge in their briefing throughout the first four years of this long-running litigation. Plaintiffs suffer no ongoing harm from the 2016 Rule because its challenged provisions have been vacated by the district court and rescinded and replaced by HHS. Accordingly, the district court cannot grant plaintiffs any additional effective relief against the 2016 Rule.

None of the limited exceptions to mootness can revive plaintiffs' challenge to the 2016 Rule. Nor can plaintiffs reanimate this case by belatedly asserting that their challenge to the 2016 Rule has always included an implicit yet unarticulated challenge to possible future enforcement of Section 1557 itself. The only point in the history of this litigation where plaintiffs expressly indicated an interest in obtaining a broad injunction prohibiting HHS from enforcing Section 1557—and not just the 2016

Rule—was in the proposed injunction orders submitted along with plaintiffs' motions for summary judgment. But that brief allusion to the possibility of broader relief is insufficient to preserve a challenge to Section 1557.

In any event, mootness is evaluated with respect to the relief expressly sought in the pleadings. And plaintiffs' operative complaint is clear: it does not assert a RFRA challenge directly against Section 1557, and it only seeks injunctive relief against the 2016 Rule. The district court plainly shared that understanding of the scope of plaintiffs' complaint when it concluded that vacatur of the 2016 Rule provided adequate relief to plaintiffs on both their APA and RFRA claims. Moreover, plaintiffs cannot invoke Federal Rule of Civil Procedure 54(c) to circumvent mootness, particularly because this would require granting relief that cannot be justified based on the scope of the RFRA claims actually pleaded in the complaint.

II.     Even if plaintiffs had properly preserved a challenge to Section 1557 and not just to the 2016 Rule, Article III and well-settled equitable principles would nonetheless bar issuance of the permanent injunction sought by plaintiffs. The only live RFRA claim that plaintiffs could attempt to assert at this juncture would take the form of a broad challenge to hypothetical future application of Section 1557 to religious entities. But HHS has not to date determined whether, or to what extent, Section 1557 requires the provision and coverage of gender-transition procedures by any entities with religious objections to providing or covering those services, or evaluated how RFRA and other religious exemptions might apply to such religious

19

entities.  Nor has the agency threatened or initiated any enforcement activity against plaintiffs—or any religious entities who object to providing gender-transition procedures or abortions—in a specific case where the protections of RFRA or other religious exemptions could properly be asserted and assessed.

Nonetheless, plaintiffs speculate that HHS will attempt to enforce Section 1557 to require them to perform and to provide insurance coverage for gender-transition procedures and abortions.  The district court erred in granting a permanent injunction premised on this hypothetical dispute.  Because plaintiffs' claim is rooted in speculation, plaintiffs lack standing, their claim is not ripe, and they have not demonstrated imminent irreparable harm necessary to justify permanent injunctive relief.

**A.**　　Plaintiffs have not demonstrated that they have standing to challenge HHS's possible future enforcement of Section 1557.  HHS has not initiated or threatened any Section 1557 enforcement activity against plaintiffs or any religious entity with religious objections to performing or providing coverage for gender-transition procedures or abortions.  Accordingly, plaintiffs' speculation about what enforcement actions HHS may take in the future cannot demonstrate imminent injury sufficient to support standing.

**B.**　　Moreover, any RFRA claim that could support plaintiffs' request for permanent injunctive relief against HHS would not be ripe.  Much of the RFRA analysis would necessarily depend on the specific actions HHS might take in the

future, including the extent or nature of any accommodation or exemption HHS might offer. And, should there ever be any specific enforcement proceeding against plaintiffs, they would have the opportunity to raise these same RFRA arguments therein.

**C.** For similar reasons, plaintiffs have not demonstrated imminent irreparable harm sufficient to justify permanent injunctive relief.

## STANDARD OF REVIEW

This Court reviews the district court's grant of a permanent injunction for abuse of discretion, but questions of law are reviewed de novo. *See Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016).

## ARGUMENT

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotation marks omitted). That "bedrock" Article III requirement ensures that the judicial power is invoked only "as a necessity in the determination of real, earnest and vital controversy." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (quotation marks omitted). The case-or-controversy inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was" unlawful. *Raines v. Byrd*, 521 U.S. 811, 819-

20 (1997); *see also Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III.").

Because federal courts "'do not render advisory opinions,'" *Golden v. Zwickler*, 394 U.S. 103, 108 (1969), they "have no authority to hear moot cases," *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 369 (5th Cir. 2020). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Particularly where plaintiffs bring suit when no enforcement action has been taken against them, several additional Article III doctrines are implicated. Under the doctrine of standing, a court must ensure that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quotation marks omitted). A plaintiff must, *inter alia*, show it has suffered an injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 158 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An alleged future injury satisfies that requirement only "if the threatened injury is

'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Id.* (quoting *Clapper*, 568 U.S. at 410, 414 n.5). This Court must assess standing "'under the facts existing when the [operative] complaint is filed.'" *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 n.3 (5th Cir. 2014).

A plaintiff "satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *SBA List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020). A plaintiff may show a credible threat by demonstrating that it was subject to past enforcement or has received a targeted threat of future enforcement. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (plaintiff had standing where he was twice instructed that if he did not cease challenged conduct, he would be prosecuted); *SBA List*, 573 U.S. at 164 ("threat of future enforcement of the [challenged] statute is substantial" as "there is a history of past enforcement here"); *cf. Clapper*, 568 U.S. at 411 (plaintiffs' theory of standing was "substantially undermine[d]" by their "fail[ure] to offer any evidence that their communications ha[d] been monitored" under the challenged statute).

A plaintiff cannot, however, satisfy Article III merely by alleging that it engages in conduct that it fears may violate federal law. *See, e.g., Clapper*, 568 U.S. at 410; *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009); *Thomas v. Anchorage Equal Rights*

*Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Likewise, "'general threats by officials to enforce those laws which they are charged to administer' do not create the necessary injury in fact" absent a more particularized basis for the plaintiff to fear enforcement. *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) (alteration omitted) (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 88 (1947)).

Lawsuits filed when there has been no enforcement action against plaintiffs also implicate the doctrine of ripeness. The ripeness doctrine seeks to prevent the adjudication of claims relating to "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998). Under ripeness principles, courts must "dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (quotation marks omitted). The "key considerations" in making that determination "are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quotation marks omitted).

Adherence to those principles ensures that federal courts remain within their assigned role in our system of separated powers. A plaintiff cannot sue to obtain an anticipatory injunction based on its speculative predictions about what policies an agency may adopt in the future. *See American Stewards of Liberty v. Department of Interior*, 960 F.3d 223, 228 (5th Cir. 2020) ("[I]t is well settled that the federal courts established pursuant to Article III of the Constitution do not render advisory opinions; concrete legal issues, presented in actual cases, not abstractions are

requisite." (alteration and quotation marks omitted)).  Nor may a plaintiff sue to compel the Executive Branch to formulate an enforcement position and thereby create a dispute that does not otherwise exist.  *Cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Article III courts are limited to real, extant disputes requiring immediate resolution.

## I.  This Case Is Moot Because Plaintiffs Only Challenged the 2016 Rule.

**A.**     Article III's case-or-controversy requirement means that "parties must continue to have a personal stake in the outcome of [a] lawsuit." *Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990)).  Consequently, "an appeal must be dismissed when … it [is] impossible for the court to grant any effectual relief whatever to a prevailing party." *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) (quotation marks omitted).  A defendant alleging mootness generally bears a "'formidable burden'" to show mootness, but a "government entity … bears a lighter burden to prove that challenged conduct will not recur." *Moore v. Brown*, 868 F.3d 398, 406-07 (5th Cir. 2017).

**1.**     Consistent with these principles, challenges to agency regulations often become moot when the agency rescinds the challenged regulations or a court vacates them. *See, e.g., Louisiana Envtl. Action Network v. U.S. EPA*, 382 F.3d 575, 581 (5th Cir. 2004) (holding that request for relief from EPA rules was moot after "vacatur of the

agency's final rules"); *Sannon v. United States*, 631 F.2d 1247, 1250-51 (5th Cir. 1980) (holding part of an appeal moot because of new regulations). Indeed, this Court has acknowledged "without doubt" "[t]hat newly promulgated regulations immediately applicable to litigants in a given case can have the effect of mooting what once was a viable case." *Sannon*, 631 F.2d at 1250-51 (collecting cases).

Other circuits widely hold that the rescission of a regulation moots a challenge to that regulation. *See, e.g.*, *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1253 (10th Cir. 2009) (Gorsuch, J.) (Because the "new Park Service rule also supersedes its 2007 rule, it is now beyond cavil … that the petitioners' underlying challenge to that rule is also moot."); *id.* ("[B]y eliminating the issues upon which this case is based, the agency's adoption of the new rule has rendered the appeal moot." (alteration and quotation marks omitted)); *National Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001) (holding that challenge to an "old set of rules" was moot in light of the "new system … now in place"); *Alaska v. U.S. EPA*, 521 F.2d 842, 843 (9th Cir. 1975) (holding that challenge was "either … moot or not ripe" because agency had "indefinitely suspended" the challenged regulation, and "should this suspension be lifted, or new regulations be promulgated pertaining to the same subject matter in general, another petition for review … may be filed").

That principle applies here. Plaintiffs' operative complaint makes clear that they brought this case solely as a challenge to HHS's 2016 Rule. *See, e.g.*, ROA.311 ("This lawsuit challenges *a new Regulation* … issued by the Department of Health and

Human Services … that seeks to override the medical judgment of healthcare professionals across the country." (emphasis added)); ROA.352, ¶ 121 ("The Regulation is not in accordance with Section 1557 of the Affordable Care Act (42 U.S.C. § 18116) or Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*"); ROA.379, ¶ 295 ("The Regulation violates the Plaintiffs rights secured to them by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*"); ROA.393-394 (seeking declaratory relief with respect to "the challenged Regulation" and a "permanent injunction enjoining Defendants from enforcing the challenged Regulations" against plaintiffs in Prayer for Relief). Plaintiffs' summary-judgment briefing also made clear that plaintiffs were asking the court to "vacate the unlawful portions of the [2016] Rule, and make its preliminary injunction [barring enforcement of the challenged provisions of the 2016 Rule] permanent." ROA.3354; *see also* ROA.1889 (seeking "[a] permanent injunction prohibiting Defendants from enforcing the [2016] Rule"); ROA.3286 (same).

But Plaintiffs are suffering no harm from the 2016 Rule because the district court already vacated the provisions that plaintiffs challenged, which the government did not appeal. Moreover, the challenged provisions of the 2016 Rule were rescinded by HHS and superseded by the 2020 Rule. And HHS's 2020 Rule includes the religious exemption that plaintiffs argued was required. Accordingly, were the district court to have granted plaintiffs the remaining relief sought in their complaint—an injunction against enforcement of the 2016 Rule—it would have had no effect. Put

another way, the sole basis for the district court's jurisdiction in this case was plaintiffs' challenge to the 2016 Rule; that basis no longer exists.

In order to seek injunctive relief beyond what they expressly requested in their operative complaint, plaintiffs could have sought to amend their complaint or filed a new suit challenging hypothetical future enforcement of Section 1557. But the availability of those avenues only underscores that the action plaintiffs actually brought here is moot. Because plaintiffs cannot obtain any additional effective relief with respect to the 2016 Rule, the proper course is to vacate the permanent injunction and remand with instructions to dismiss this case.

**2.** Plaintiffs' reliance on the voluntary-cessation exception to mootness is misplaced. *See* ROA.4932, 5006-5007 (invoking exception before district court). As this Court has recognized, the goal of the voluntary-cessation inquiry "is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). And because government officials are accorded a presumption of good faith, in the absence of "evidence to the contrary," the Court "assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* at 911 (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)); *see id.* at 910 (recognizing that courts are "justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude" (quoting *Sossamon*, 560

F.3d at 325)); *Moore*, 868 F.3d at 406-07.  Neither plaintiffs nor the district court identified any evidence that the rescission of the 2016 Rule was illegitimate in any way.

Voluntary-cessation principles are particularly inapplicable here given the nature of the challenged agency action.  It is a "well-settled principle of law" that "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021) (quotation marks omitted).  The voluntary-cessation exception does not undermine that principle.  *See, e.g.*, *New Mexico Health Connections v. HHS*, 946 F.3d 1138, 1161 (10th Cir. 2019) (rejecting application of voluntary cessation where agency "replaced the original rules with these new ones" and could not "revert to the original rules without a new proceeding"); *Alaska*, 17 F.4th at 1228-29 (holding that prospect of future rulemaking did not save case from mootness under voluntary-cessation principles and declining to "speculate about future actions by policymakers" and presume an outcome "inconsistent with the purpose of notice-and-comment rulemaking").  Unlike the circumstances in which this exception ordinarily applies, where a defendant unilaterally ceases an action that it can easily resume later, an agency would need to undertake a new notice-and-comment rulemaking to re-promulgate the challenged rule.  *Cf. Alaska*, 17 F.4th at 1229 n.5 (observing differences between "structural obstacles to reimposing a challenged law"—which "generally moot a case"—and "actions that can be reversed at the stroke of a pen or otherwise face minimal hurdles to re-enforcement"—which "can thwart

mootness"). A federal agency cannot credibly be accused of rescinding and replacing a challenged regulation through notice-and-comment rulemaking as an act of mere litigation posturing. *See id.* (declining to "impute voluntary cessation where nothing suggests it").

    **B.**    The district court erred in adopting plaintiffs' belated reframing of their RFRA claims in order to conclude that this case is not moot.

    **1.**    Plaintiffs argue that this case is not rendered moot by the unavailability of any further effective relief against the 2016 Rule because they also sought relief against the underlying statute. *See* ROA.4933-4934. Significantly, this was not how the district court understood the scope of relief sought when it issued final judgment on plaintiffs' RFRA claims in October 2019. *See* ROA.4799 (concluding that "issuance of an injunction would not have a 'meaningful practical effect independent of its vacatur' because vacatur and remand will likely prevent Defendants from applying the [2016] Rule" and "should Defendants attempt to apply the vacated [2016] Rule … Plaintiffs may return to the Court for redress"). The only thing plaintiffs cite to support their argument that they sought relief broader than an injunction prohibiting enforcement of the 2016 Rule is a single-sentence subparagraph in two proposed injunction orders that were submitted with their motions for summary judgment. *See* ROA.3292, ¶(f); ROA.1896, ¶(f). That cursory mention is not sufficient to preserve a broad challenge to HHS's hypothetical future enforcement of Section 1557.

In any event, in assessing mootness, courts must look to "a party's requested relief—not the theoretical possibility that a party *could* request or receive something." *Herndon v. Upton*, 985 F.3d 443, 449 (5th Cir. 2021) (Oldham, J., concurring), *cert. denied*, 142 S. Ct. 82 (2021); *see also Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) ("[T]he scope of a federal court's jurisdiction to resolve a case or controversy is defined by the affirmative claims to relief sought in the complaint …."). Accordingly, in *New York State Rifle & Pistol Association v. City of New York*, the Supreme Court refused to consider a case where plaintiffs had obtained "the precise relief … requested in the prayer for relief in their complaint." 140 S. Ct. 1525, 1526 (2020) (per curiam). The Court declined to find that the controversy remained live based on the possibility of damages where plaintiffs "did not seek damages in their complaint" and remanded for consideration of whether plaintiffs could "still add a claim for damages in th[at] lawsuit." *Id.* at 1526-27.

Here, plaintiffs did not bring a broad claim seeking to prohibit HHS from enforcing Section 1557 in their operative complaint. Rather, they asked the court to "[d]eclare that *the challenged Regulation* is invalid under [RFRA]," ROA.393, ¶(b) (emphasis added), and permanently enjoin "Defendants from enforcing *the challenged Regulation*[] against Plaintiffs," ROA.394, ¶(i) (emphasis added). The district court thus erred in concluding that this case was not moot based upon plaintiffs' recent re-characterization of this long-running action as a challenge to possible, future enforcement of Section 1557 itself. *See* ROA.5061-5063 (assessing mootness with

31

respect to, *inter alia*, "the means by which Section 1557 operates today" and "the enforcement of Section 1557"). "Whether or not" future agency actions to interpret or enforce Section 1557 in the way plaintiffs fear might occur, plaintiffs "ha[ve] not sought in this lawsuit to prevent" them. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 71 (1983). "Future positions taken by the parties might bring such issues into controversy, but that possibility is simply too remote from the present controversy to keep this case alive." *Id.*

**2.** Plaintiffs further argue that, even if they had not sought relief against possible enforcement of the statute, the district court could still grant the requested injunction under Rule 54(c). ROA.4934; *see* Fed. R. Civ. P. 54(c) ("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). The district court agreed, observing that courts may "grant any appropriate relief following a general prayer by the plaintiffs, even if the plaintiff did not specifically seek it, but only where relief is otherwise legally permitted." ROA.5068 (quoting *Peterson*, 806 F.3d at 340). That conclusion was erroneous.

The argument that relief beyond what is expressly requested is available under Rule 54(c) was specifically raised by the dissent in *New York State Rifle & Pistol Association* to argue that the case was not moot. *See* 140 S. Ct. at 1535 (Alito, J., dissenting). But this point did not persuade the majority, which concluded that

plaintiffs needed to specifically "add a claim for damages" in order for the action to proceed. *Id.* at 1527 (per curiam).

Moreover, this Court has long recognized that "Rule 54(c) is limited to allowing a court 'to order appropriate relief; it does not permit a court to impose liability where none has been established.'" *Southern Constructors Grp. v. Dynalectric Co.*, 2 F.3d 606, 610 (5th Cir. 1993) (alteration omitted); *see Solferini v. Corradi USA, Inc.*, No. 20-40645, 2021 WL 3619905, at *2 n.2 (5th Cir. Aug. 13, 2021) (per curiam) (observing that Rule 54(c) did "not operate to salvage [a] claim" that was not pleaded in the complaint). Any relief granted under Rule 54(c) "must be based on what is alleged in the pleadings and justified by plaintiff's proof." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2662, Westlaw (database updated Apr. 2021). Accordingly, "a court cannot provide relief, even when it is demanded, if the plaintiff fails to assert a claim upon which the relief could be based." *Flannery v. Carroll*, 676 F.2d 126, 132 (5th Cir. 1982); *see* Wright & Miller, *supra*, § 2664.

The district court premised its permanent injunction on the "success on the merits for [plaintiffs'] RFRA claim." ROA.5066. But the RFRA claims in plaintiffs' operative complaint asserted only that "[t]he Regulation"—*i.e.*, the 2016 Rule— "violates the Plaintiffs rights secured to them by the Religious Freedom Restoration Act." ROA.379, ¶ 295; ROA.381, ¶ 311. The RFRA claims do not challenge Section 1557, or HHS's hypothetical application of that provision to them, apart from the operation of the 2016 Rule. ROA.378-381, ¶¶ 281-311. Plaintiffs' RFRA claims thus

provide no basis for the entry of a permanent injunction prohibiting HHS "from interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), or any implementing regulations thereto against Plaintiffs," ROA.5069, distinct from the 2016 Rule.

In any event, as explained in Section II, plaintiffs have not shown an imminent likelihood that HHS will interpret Section 1557 to require plaintiffs to provide or cover gender-transition procedures or abortion services over their religious objections, and plaintiffs' speculation about future positions it expects HHS to take is insufficient to establish standing, ripeness, or irreparable harm. Accordingly, the district court's permanent injunction was not "appropriate relief" and is not "legally permissible" or in accordance with the requirements of Article III. *See Peterson*, 806 F.3d at 340.

## II. In the Alternative, Plaintiffs Failed to Demonstrate Standing, Ripeness, and Imminent Irreparable Harm Sufficient to Support a Permanent Injunction.

Even if plaintiffs' claims could properly be understood as a challenge to hypothetical, future enforcement of Section 1557 against religious entities that invoke the protections of RFRA and other religious exemptions, plaintiffs have not established any Article III case or controversy with respect to those claims. Plaintiffs have not demonstrated that HHS has threatened to enforce Section 1557 against them or informed them that they may be in violation of the statute. *See Hughes v. City of Cedar Rapids*, 840 F.3d 987, 992 (8th Cir. 2016) (plaintiff did not have standing to challenge city's use of traffic cameras where plaintiff asserted fear of enforcement

against him but had not received a notice of violation).  Rather, plaintiffs base their alleged fear of enforcement entirely on their speculation that HHS might, at some unspecified time in the future, choose to bring enforcement actions seeking to compel them to perform and provide insurance coverage for gender-transition procedures or abortions.  This speculation is insufficient to demonstrate standing and ripeness, or the irreparable harm necessary to justify a permanent injunction.

## A.  Plaintiffs Lack Standing.

**1.**  This Court must assess standing "'under the facts existing when the [operative] complaint is filed.'"  *Duarte*, 759 F.3d at 520 n.3.  Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).  In October 2016, when the operative complaint was filed, HHS's latest word on the application of Section 1557's prohibition of sex discrimination was the 2016 Rule.  Plaintiffs have made no effort, however, to demonstrate a credible threat that the statute would be enforced against them in the absence of the 2016 Rule.  *See* ROA.5012 (asserting briefly that the district court already found standing without attempting to demonstrate standing for the new relief sought).  As such, permanent injunctive relief cannot be justified against the enforcement of Section 1557 itself, as distinct from the challenged 2016 Rule.

Furthermore, although many developments have transpired since the operative complaint was filed, they do not support plaintiffs' standing to seek broad injunctive

relief against HHS's possible enforcement of the underlying statute. As an initial matter, plaintiffs cannot "rely on events that unfolded after the filing of the complaint to establish [their] standing." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005). When a plaintiff lacks standing based on the facts that existed at the time the action was initiated, it must either file "a supplemental pleading alleging facts that arose after the original complaint" to cure the standing defect or "file a new lawsuit to pursue the claims." *Scahill v. District of Columbia*, 909 F.3d 1177, 1183 (D.C. Cir. 2018) (collecting cases); *cf. Fontenot v. McCraw*, 777 F.3d 741, 746-47 (5th Cir. 2015) (assessing standing at the time of filing of an amended complaint). Plaintiffs did not attempt to file a supplemental pleading to allege before the district court any facts pertaining to the prospect of enforcement that plaintiffs assert has arisen since the vacatur of the 2016 Rule. Nor is it clear that they could do so at this stage. *See Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (observing that district courts consider "a variety of factors" in determining whether to grant leave to amend, "including undue delay").

In any event, the relevant developments do not demonstrate a sufficient risk that HHS would adopt and enforce an interpretation of Section 1557 requiring objecting religious entities to provide and cover gender-transition procedures and abortion services. The 2020 Rule rescinded the (already-vacated) 2016 Rule's provisions prohibiting gender-identity and termination-of-pregnancy discrimination, and paraphrased the statutory language without adopting a new regulatory definition

of sex discrimination.  85 Fed. Reg. at 37,162-65, 37,178.  In May 2021, HHS issued a notification indicating that HHS would interpret and enforce Section 1557's prohibition of discrimination on the basis of sex to include discrimination on the basis of sexual orientation and gender identity, subject to RFRA and any other applicable legal requirements.  86 Fed. Reg. at 27,984-85.

Even though HHS has now taken the position, consistent with the Supreme Court's interpretation of Title VII in *Bostock*, that sex discrimination includes gender-identity discrimination under Section 1557, the agency has not to date evaluated whether Section 1557 requires entities with religious objections to provide or cover gender-transition procedures, or how RFRA and other religious exemptions might further apply to such religious entities.  And *Bostock* itself explicitly reserved the question of how RFRA interacts with nondiscrimination statutes, emphasizing that the way in which "doctrines protecting religious liberty interact with Title VII are questions for future cases."  *Bostock*, 140 S. Ct. at 1754.

Nor has the agency threatened or initiated any enforcement activity against plaintiffs—or any objecting religious entities—with respect to gender-transition procedures or abortion services in which the protections of RFRA or other religious exemptions could be asserted and assessed.  *See Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (holding that plaintiff lacked standing to bring a First Amendment challenge where risk of prosecution was "speculative" and not "reasonably certain"); *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 585-87 (8th

Cir. 2013) (holding that plaintiff lacked standing to bring a First Amendment challenge where defendant had not threatened to enforce the challenged provisions against plaintiff and the challenged policy did not compel any actions by plaintiff). Indeed, the May 2021 notification explicitly states that HHS "will comply with the Religious Freedom Restoration Act, 42 U.S.C. 2000bb *et seq.*, and all other legal requirements." 86 Fed. Reg. at 27,985 (footnote omitted). Even if plaintiffs could use evidence of what happened after the commencement of the suit to demonstrate standing, these cumulative events are insufficient to demonstrate an Article III case or controversy.

Because HHS has not yet concluded that plaintiffs' proposed conduct—to decline to participate in gender-transition procedures or perform abortions, and to exclude coverage for such services in their insurance plans, ROA.3315-3317; ROA.4911—violates the relevant statute, this Court should reject plaintiffs' attempts to pretermit the agency's evaluation of the issues and obtain a preemptive judicial declaration that HHS may not bring an enforcement action against plaintiffs. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998) (concluding that dispute was not justiciable where "immediate judicial review … could hinder agency efforts to refine its policies").

**2.** The district court erred in concluding that plaintiffs had established standing for the purposes of obtaining an injunction against HHS's hypothetical future enforcement of Section 1557.

38

In addressing standing below, the district court briefly stated that it was "declin[ing] to relitigate" the government's arguments "as they fail for the same reason as before," citing the court's preliminary-injunction and summary-judgment opinions. ROA.5063 n.12. The district court only expressly addressed standing at the preliminary-injunction stage. *See* ROA.1770-1775; ROA.4790-4791 4791 n.5 (stating in summary-judgment opinion that court had "already addressed most of [intervenors'] arguments," which included standing). In doing so, the court based its finding in part on facts alleged by States that are no longer part of this action. *See* ROA.1773 & n.15 (citing brief and declaration of State plaintiffs regarding investigation into their "potential noncompliance"); ROA.4899; ROA.5052 (noting that "Christian Plaintiffs" sought permanent injunction at issue). And the court found standing to seek the particular forms of relief at issue in those stages of the case. *See* ROA.4795 ("Plaintiffs request two forms of relief: (1) vacatur of the [2016] Rule and (2) a permanent injunction enjoining Defendants from applying the [2016] Rule nationwide."); ROA.1800 (discussing scope of preliminary injunction). The court thus erred in declining to assess whether the discrete plaintiffs seeking a new form of injunctive relief at this late stage of the litigation in fact demonstrated their standing to seek different, broader relief.

The district court's standing analysis at the preliminary-injunction stage does not justify its conclusion that plaintiffs have demonstrated standing to obtain permanent injunctive relief against HHS's hypothetical future enforcement of the

underlying statute. Article III requires that an injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'" to establish standing. *SBA List*, 573 U.S. at 158 (quoting *Lujan*, 504 U.S. at 560). Plaintiffs' allegations of harm at this point rest entirely on their speculation that HHS might one day interpret and enforce Section 1557 to require them to provide or cover gender-transition procedures or abortions over their religious objections, despite the protections of RFRA and other statutes. But this speculative "allegation of future injury" is not sufficient to prove standing where plaintiffs have not demonstrated that the threatened injury is "certainly impending" or that there is a "substantial risk" that it will occur. *Id.* (quoting *Clapper*, 568 U.S. at 409, 414 n.5).

More specifically, for purposes of this pre-enforcement challenge, plaintiffs cannot demonstrate that their intended conduct is "proscribed by [the challenged] statute, and there exists a credible threat of prosecution thereunder." *SBA List*, 573 U.S. at 159 (quotation marks omitted). The district court concluded for purposes of granting a preliminary injunction that plaintiffs suffered a concrete injury-in-fact based on their "reasonable" "fears that they will be subject to enforcement under the [2016] Rule." ROA.1773. And in granting a permanent injunction the court concluded that "the current Section 1557 regulatory scheme credibly threatens the same RFRA-violating religious-burden that the application of the 2016 Rule threatened." ROA.5063. Even assuming the court's initial conclusion with respect to likely injuries

flowing from the 2016 Rule was correct, its conclusion about the prospect of injury from enforcement of Section 1557 itself was unfounded.

a.     At the preliminary-injunction stage, the district court observed that plaintiffs were "covered entities whose insurance plans include a categorical exclusion of transition-related procedures that is forbidden by the [2016] Rule." ROA.1773. The so-called "current Section 1557 regulatory scheme," ROA.5063, contains no such established prohibition. The 2020 Rule's preamble stated HHS's view at the time that it lacked a compelling interest to require provision of such procedures by religious employers under RFRA. *See* 85 Fed. Reg. at 37,188. HHS has not issued any other statements on the subject of the provision or coverage of gender-transition procedures by religious entities since the publication of that rule.

Moreover, although Section 1557 prohibits discrimination "on the basis of sex," 42 U.S.C. § 18116(a); 20 U.S.C. § 1681(a), it does not address how RFRA might affect the application of this prohibition to objecting religious entities. *See Bostock*, 140 S. Ct. at 1754 (specifically reserving the question of how RFRA and other "doctrines protecting religious liberty interact with Title VII" and explaining that these "are questions for future cases"). And in assessing whether plaintiffs' intended conduct is clearly proscribed for purposes of standing to bring a pre-enforcement challenge, the relevant "statute" here is not just Section 1557; it is also RFRA, which (as *Bostock* emphasized) sometimes alters the normal application of other statutes to objecting religious entities. *See id.* Given the uncertainty about how Section 1557 and RFRA

41

would interact in any particular situation, and how HHS might seek to harmonize those two statutes in considering whether to take enforcement actions against any objecting religious entity or whether to grant an exemptions under RFRA, plaintiffs cannot demonstrate a likelihood of imminent injury, because mere uncertainty is inadequate to confer standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) (observing that "subjective apprehensions" are insufficient and "a real and immediate threat of future injury" is required to confer standing to seek an injunction); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) (plaintiff's "'paralyzing uncertainty'" from fear that it might be sued was not sufficient to confer standing).

The district court further erred insofar as its ruling rests on the erroneous factual premise that the preliminary injunctions against the 2020 Rule in *Walker* and *Whitman-Walker* reinstated the prior definition of "on the basis of sex" to include "gender identity" and "sex stereotyping." *See* ROA.5059, 5062-5063. Both district courts that issued preliminary injunctions against the 2020 Rule explicitly recognized that they had "no power to revive [provisions] vacated by another district court." *Walker*, 480 F. Supp. 3d at 427; *Whitman-Walker*, 485 F. Supp. 3d at 26 (explaining that court was "powerless to revive" provisions that the *Franciscan Alliance* district court had vacated). Accordingly, the preliminary injunctions against the 2020 Rule did not affect the district court's vacatur of the 2016 Rule "insofar as [it] define[d] '[o]n the

42

basis of sex' to include gender identity." ROA.4815 (emphasis omitted).[3] Moreover, although the preliminary injunctions against the 2020 Rule revived the 2016 Rule's prohibition of discrimination on the basis of sex stereotyping, plaintiffs have not demonstrated that HHS has brought or threatened any enforcement action against any religious entity that objects to performing or covering gender-transition procedures based on the sex-stereotyping provision.

Additionally, contrary to the district court's suggestion, ROA.5058-5060, 5062-5063, the combination of the May 2021 notification with those injunctions lends no support to the notion that an objecting religious entity's decision not to provide or cover gender-transition procedures or abortions would necessarily be proscribed, for the reasons explained above. *See supra* pp. 37-38. The district court thus erred in concluding that "HHS has practically 'already'" reimposed its "enforcement of Section 1557 … in the same religion-burdening way as the 2016 Rule." ROA.5062-5063.[4]

**b.** Nor can plaintiffs demonstrate any credible threat of enforcement, much less a "substantial" likelihood of such action. *See California v. Texas*, 141 S. Ct. 2104,

---

[3] Nor do these injunctions, or the May 2021 notification, affect the likelihood of Section 1557's enforcement with respect to abortion services. The district court vacated the former definition of "on the basis of sex" insofar as it included "termination of pregnancy." ROA.4815. That definition was also formally repealed, *see* 85 Fed. Reg. at 37,244, and no court has enjoined that change in the 2020 Rule.

[4] Accordingly, the district court also erred to the extent it based its mootness ruling on the premise that the challenged provisions in the 2016 Rule remained in effect as a practical matter. *See* ROA.5061-5063, 5062 n.11.

2114 (2021) ("In the absence of contemporary enforcement, we have said that a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'").  As explained, HHS made clear in its May 2021 notification that it would comply with RFRA "and all other legal requirements" when enforcing Section 1557, *see* 86 Fed. Reg. at 27,985, which includes conscience protections that proscribe HHS from requiring the performance or coverage of abortion services as a condition for receiving federal funds.  There is no cause to doubt HHS's commitment to faithfully apply RFRA and other conscience protections in enforcing Section 1557. *Cf. Moore*, 868 F.3d at 407 ("As government actors, Defendants' statement of non-enforcement is entitled to a presumption of good faith.").

Significantly, plaintiff Franciscan Alliance has not demonstrated that it has ever been asked by a patient or employee to perform or cover a gender-transition procedure or abortion.  *See* ROA.3315-3317, 3365-3378 (discussing policies without identifying any discrete instance in which asked to violate those policies).  And plaintiff Christian Medical and Dental Society, a membership association, has only averred generally that "[a] number of [its] members have begun receiving requests from patients for gender-transition related procedures," ROA.3389, ¶ 24, without identifying any specific requests or members to which they were directed.  *See* ROA.3316-3318, 3381-3390, 3827-3830; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (noting that for associational standing, a plaintiff must "establish[] that at least one *identified* member had suffered or would suffer harm" (emphasis

added)).  The absence of such evidence underscores that plaintiffs have not demonstrated a substantial likelihood that any complaint against plaintiffs will even be filed with HHS to initiate a potential investigation and enforcement action.  *See* 45 C.F.R. § 80.7(b)-(d); *see also id.* §§ 86.71, 92.5(a).

Moreover, plaintiffs have not pointed to *any* instances of HHS revoking federal funding from, or bringing enforcement actions in court against, religious providers for declining to provide or cover gender-transition procedures or abortions in the twelve years since Section 1557 was enacted.  *Cf. SBA List*, 573 U.S. at 164 (plaintiffs demonstrated substantial threat of future enforcement where enforcement agency had already found probable cause that plaintiff had violated the challenged statute in the past).

Nor can plaintiffs demonstrate a credible threat of enforcement based merely on HHS's repeated rulemakings on this issue.  "'[G]eneral threats by officials to enforce those laws which they are charged to administer' do not create the necessary injury in fact" absent a more particularized basis for the plaintiff to fear enforcement.  *Lopez*, 630 F.3d at 787 (alteration omitted) (quoting *United Pub. Workers of Am.*, 330 U.S. at 88).  That HHS may enforce Section 1557's prohibition of sex discrimination—by, for example, bringing enforcement actions against a healthcare provider who refused medical services to a patient because she is a woman, or a healthcare provider who refuses to treat a transgender patient's broken bone based on the patient's gender identity—does not demonstrate that HHS will bring enforcement

actions against *religious* providers who refuse to provide gender-transition or abortion services.

**B.      Plaintiffs' Claim Is Not Ripe.**

**1.**      Plaintiffs' belated RFRA claim seeking an injunction broadly prohibiting HHS's possible future enforcement of Section 1557 also fails because it is not ripe.  In order to properly analyze how Section 1557 and RFRA might interact, and whether a hypothetical action by HHS would substantially burden plaintiffs' religious exercise without furthering a compelling governmental interest or without using the least restrictive means, 42 U.S.C. § 2000bb-1(a)-(b), a court would need to examine specific facts in an actual case.  Because much of this analysis necessarily depends on a case-specific assessment of both the action (or failure to act) that plaintiffs claim is protected under RFRA and the specific enforcement activity undertaken by HHS, it is not fit for judicial review at this time.  *See Ohio Forestry Ass'n*, 523 U.S. at 735-36 (dispute was not ripe where it was unclear specifically what action the agency may take in the future).

If, for example, HHS were to interpret Section 1557 to require plaintiffs to provide gender-transition services only under certain limited circumstances, the court would need to evaluate how Section 1557 and RFRA might interact, including the issues of substantial burden, compelling interest, and least restrictive means in the specific context of what is being required of plaintiffs.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not … give opinions advising what the law

would be upon a hypothetical state of facts." (alteration and quotation marks omitted)); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) ("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." (quotation marks omitted)). And if, for example, HHS does not require objecting religious entities like plaintiffs to provide gender-transition or abortion services at all, there would be no dispute. *See National Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 694 (8th Cir. 2003) (holding that case was not ripe because "[w]ithout additional factual development, we cannot be sure there is even a dispute here to resolve"); *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (holding that claim was "merely abstract or hypothetical, and thus too speculative to be fit for judicial review at this time" where future event that could support claim "'may not occur as anticipated, or indeed may not occur at all'"). In short, plaintiffs' RFRA claim can only be adjudicated in the context of a fully developed factual record in which HHS is actually requiring plaintiffs to do something specific. *See Renne v. Geary*, 501 U.S. 312, 324 (1991) (explaining that "[r]ules of justiciability" counsel against deciding a case "based upon [an] amorphous and ill-defined factual record"); *Ohio Forestry Ass'n*, 523 U.S. at 736 (concluding that dispute was not justiciable where review "would require time-consuming judicial consideration" "without benefit of the focus that a particular [application of the challenged agency plan] could provide").

This Court has recently endorsed "the importance of an unequivocally expressed position by the government" in evaluating the ripeness of a pre-enforcement challenge to agency action. *Walmart Inc. v. U.S. Dep't of Justice*, 21 F.4th 300, 312 (5th Cir. 2021). In light of the "lack of a clear position on the part of the government"—resulting in a challenge to "a series of positions that the government does not quite take"—the Court deemed the challenge at issue to be premature and unfit for judicial decision. *Id.* Similarly, because HHS has not yet formulated a clear position regarding whether Section 1557 requires entities with religious objections to provide and cover gender-transition procedures—or how RFRA and other religious exemptions might apply to such religious entities—plaintiffs' challenge is necessarily premature.

Permitting plaintiffs to sue to preemptively block Executive agencies from adopting enforcement positions to which plaintiffs object, based simply on plaintiffs' speculation about what specific agencies might do, would also subordinate administrative autonomy and aggrandize the role of the federal courts in the policymaking process. *See Freytag v. Commissioner*, 501 U.S. 868, 878 (1991) ("[S]eparation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch."); *Ohio Forestry Ass'n*, 523 U.S. at 733 (considering "whether judicial intervention would inappropriately interfere with further administrative action" in concluding that case was not justiciable); *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th

Cir. 2015) (ripeness protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties" (quotation marks omitted)).

On the other side of the ledger, withholding review of plaintiffs' RFRA challenge would impose little, if any, hardship on plaintiffs because they are not currently suffering any injury. *See supra* pp. 35-46; *cf. 281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (claim was ripe where plaintiffs' alleged injury was "not based on speculation about a particular future prosecution"). If any discrimination charge is ever filed against plaintiffs, or any enforcement action is ever brought against them, plaintiffs could raise all the same RFRA arguments in HHS's administrative proceedings and ultimately in court. *See Ohio Forestry Ass'n*, 523 U.S. at 729-30, 733-34 (holding that case was not ripe where plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain," and noting that there would be an administrative process before plaintiffs would face any "practical harm").

**2.** The district court erred in concluding that plaintiffs' newly reframed RFRA claim against HHS was ripe. The court explained that it "rejected the government's nearly identical argument in the past and again rejects the argument," ROA.5063 (citing ROA.1775-1779), offering only a brief, conclusory discussion that refers back to its preliminary-injunction opinion. Unlike standing, however, ripeness is "considered from the standpoint of the present." *Walmart*, 21 F.4th at 313 & n.15.

49

That the district court found plaintiffs' RFRA claims challenging the 2016 Rule to be ripe in December 2016 thus does not dictate whether plaintiffs' RFRA claim challenging the enforcement of the underlying statute is ripe several years—and several regulatory developments—later. Indeed, it is not.

The district court proceeded to conclude that "the current regulatory scheme for Section 1557 'clearly prohibits' Plaintiffs' conduct." ROA.5063. As discussed above, *see supra* pp. 37-38, 42-43, this assertion is premised on a factual error regarding the effect of the *Walker* and *Whitman-Walker* injunctions and a misunderstanding of the May 2021 notification. Correctly understood, the interpretation of Section 1557 that the court posits is purely hypothetical, as HHS has not to date interpreted how Section 1557 applies to religious entities that object to providing or covering gender-transition procedures. *See supra* pp. 37-38.

Moreover, absent facts developed in an actual enforcement action, the court could not properly evaluate plaintiffs' RFRA claim. *See National Park Hosp. Ass'n v. Department of Interior*, 538 U.S. 803, 812 (2003) (recognizing that even a "purely legal" question is unfit for adjudication where a concrete factual context would facilitate a court's "ability to deal with the legal issues presented" (quotation marks omitted)). Courts do not evaluate RFRA claims in the abstract. Instead, to rule for a plaintiff, a court must consider the specific factual context of the religious exemption requested by a particular plaintiff. *See, e.g.*, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006); *see also Ramirez v. Collier*, No. 21-5592, 2022 WL 867311, at

50

*13 (U.S. Mar. 24, 2022) (noting that "the resolution of RLUIPA claims in the prisoner context requires a case-specific consideration of the particular circumstances and claims"). The lack of specifics precludes a proper adjudication here. This is underscored by the fact that the RFRA analysis could very well produce different results in different factual contexts. And the contexts presented by possible future enforcement scenarios could differ significantly: from requiring an objecting religious entity to provide only counseling services for transgender patients or referrals to healthcare providers who are willing to provide such services, to requiring the provision of gender-transition surgery.

The district court also erred in concluding that plaintiffs suffer "practical harm" for purposes of the ripeness inquiry because they face "the 'impossible choice' of either 'defying federal law' and risking 'serious financial and civil penalties,' or else violating their religious beliefs." ROA.5063. Plaintiffs face no such choice, because HHS has not evaluated whether Section 1557 requires them, or other objecting religious entities, to provide and cover gender-transition procedures. And "mere uncertainty" does not "constitute[] a hardship for purposes of the ripeness analysis." *National Park Hosp. Ass'n*, 538 U.S. at 811.

Moreover, under HHS's enforcement framework, plaintiffs are "several steps removed from any termination of their federal funding." *Colwell v. HHS*, 558 F.3d 1112, 1128 (9th Cir. 2009) (holding that case was not ripe where HHS had not threatened enforcement action against plaintiffs). Before plaintiffs' funding could be

terminated, "there must be an effort to achieve informal or voluntary compliance, an administrative hearing, and notice to congressional committees," and "[j]udicial review of any funding termination is available in an Article III court." *Id.*; *see also id.* at 1119; 45 C.F.R. §§ 92.5, 80.7, 80.8.

## C. The District Court Erred in Concluding that Plaintiffs Demonstrated Imminent Irreparable Harm Sufficient to Justify Permanent Injunctive Relief.

For many of the same reasons discussed above, plaintiffs have not demonstrated imminent irreparable harm sufficient to justify permanent injunctive relief against HHS. To obtain a permanent injunction, a plaintiff must show that "the failure to grant the injunction will result in irreparable injury." *United Motorcoach Ass'n v. City of Austin*, 851 F.3d 489, 492-93 (5th Cir. 2017). Plaintiffs have not demonstrated that they will be irreparably harmed without an anticipatory injunction against HHS because HHS has not sought to enforce Section 1557 or threatened any enforcement activity—in which religious exemptions could be asserted and evaluated—against plaintiffs or other religious entities that oppose performing and providing coverage for gender-transition or abortion services. Just as plaintiffs' speculation about enforcement actions HHS might take at some unspecified time in the future is insufficient to demonstrate the imminent injury necessary to confer standing, it is also insufficient to demonstrate irreparable harm. *See Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011) (party seeking injunctive relief must "show that the threatened harm is more than mere speculation"); *Google, Inc. v. Hood*, 822 F.3d 212,

228 (5th Cir. 2016) (holding that district court erred in granting injunctive relief where "the possibility of some future enforcement action [did not] create[] an imminent threat of irreparable injury ripe for adjudication").

## CONCLUSION

For the foregoing reasons, the district court's permanent injunction should be vacated and this Court should remand with instructions to dismiss for lack of jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MARLEIGH D. DOVER
CHARLES W. SCARBOROUGH

/s/ McKaye L. Neumeister
McKAYE L. NEUMEISTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8100*
*McKaye.L.Neumeister@usdoj.gov*

March 2022

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.


*/s/ McKaye L. Neumeister*
McKaye L. Neumeister

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,965 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

<span style="text-align: right;">*/s/ McKaye L. Neumeister*</span>
McKaye L. Neumeister

# ADDENDUM

# TABLE OF CONTENTS

Section 1557, 42 U.S.C. § 18116 ........................................................A1

45 C.F.R. § 92.2........................................................................A2

45 C.F.R. § 92.6........................................................................A3

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ..........................................A4

**42 U.S.C. § 18116**

**§ 18116. Nondiscrimination**

**(a) In general**

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

**(b) Continued application of laws**

Nothing in this title (or an amendment made by this title) shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 794 of Title 29, or the Age Discrimination Act of 1975, or to supersede State laws that provide additional protections against discrimination on any basis described in subsection (a).

**(c) Regulations**

The Secretary may promulgate regulations to implement this section.

**45 C.F.R. § 92.2**

## § 92.2. Nondiscrimination requirements.

**(a)** Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

**(b)** The grounds are the grounds prohibited under the following statutes:

    **(1)** Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (race, color, national origin);

    **(2)** Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) (sex);

    **(3)** The Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.) (age); or

    **(4)** Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) (disability).

**45 C.F.R. § 92.6**

## § 92.6. Relationship to other laws.

**(a)** Nothing in this part shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), or to supersede State laws that provide additional protections against discrimination on any basis described in § 92.2 of this part.

**(b)** Insofar as the application of any requirement under this part would violate, depart from, or contradict definitions, exemptions, affirmative rights, or protections provided by any of the statutes cited in paragraph (a) of this section or provided by the Architectural Barriers Act of 1968 (42 U.S.C. 4151 et seq.); the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008 (42 U.S.C. 12181 et seq.), Section 508 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 794d), the Coats–Snowe Amendment (42 U.S.C. 238n), the Church Amendments (42 U.S.C. 300a–7), the Religious Freedom Restoration Act (42 U.S.C. 2000bb et seq.), Section 1553 of the Patient Protection and Affordable Care Act (42 U.S.C. 18113), Section 1303 of the Patient Protection and Affordable Care Act (42 U.S.C. 18023), the Weldon Amendment (Consolidated Appropriations Act, 2019, Pub.L. 115–245, Div. B sec. 209 and sec. 506(d) (Sept. 28, 2018)), or any related, successor, or similar Federal laws or regulations, such application shall not be imposed or required.

**42 U.S.C. § 2000bb-1**

**§ 2000bb-1. Free exercise of religion protected**

**(a) In general**

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

**(b) Exception**

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

    **(1)** is in furtherance of a compelling governmental interest; and

    **(2)** is the least restrictive means of furthering that compelling governmental interest.

**(c) Judicial relief**

A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.